## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

XIAOLIN LI,                                      Case No. 19-cv-1267 (MJD/ECW)

        Plaintiff,

    v.                                       **REPORT AND RECOMMENDATION**

FRANCHOICE, INC., and
PETER GILFILLAN,

        Defendants.

This matter is before the Court on Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6). (Dkt. 12.) This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6) be granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initiated this action on May 13, 2019. (Dkt. 1.) Plaintiff subsequently filed an Amended Complaint on June 14, 2019.

The operative Amended Complaint alleges as follows: Plaintiff Xiaolin Li ("Li" or "Plaintiff") is a citizen of Iowa, and resides in Bettendorf, Iowa. (Dkt. 11 ¶ 4.) Li became interested in purchasing a franchise in early 2016. (*Id.* ¶ 10.) In investigating franchises, Li downloaded a PowerPoint deck entitled "Why and How to Buy a Franchise: An Exciting Alternative to A Corporate Job," created by Defendant Peter

Gilfillan ("Gilfillan") who claimed to be an Entrepreneur, Franchise Consultant, and International Bestselling author of the book Hire Yourself: Control Your Own Destiny through Franchise Ownership.  (*Id.*)  On May 7, 2016, Gilfillan emailed Li for the first time, stating, "Think of me as a match maker . . . my role is to get to know you and then search for proven franchises that are a perfect match for you."  (*Id.* ¶ 11.)  On May 9, 2016, Gilfillan emailed again, letting Li know that he would be in good hands with Defendant FranChoice, Inc. ("FCI") because "we have PRE-SCREENED literally hundreds of franchise companies to find the ones that are A+ Opportunities."  (*Id.* ¶ 12.)  FCI is a corporation formed under the laws of Minnesota, with its principal place of business in Eden Prairie, Minnesota.  (*Id.* ¶ 6.)  It is a franchise broker that assists prospective franchisees in identifying, investigating, selecting and acquiring franchises.  (*Id.*)  Gilfillan is an individual residing in Illinois and is a citizen of that state.  (*Id.*)

On June 14, 4016, Li emailed Gilfillan the requirements he had for a franchise.  (*Id.* ¶ 13.)  These requirements included a fast or stable growing franchise with a strong profitability record, not new or declining concepts, and that he would be happy to generate $50K in cash a year to the point that the cash flow would exceed his corporate income.  (*Id.*)

On June 17, 2016, Gilfillan advised Li that multi-unit ownership would be a good fit for Li.  (*Id.* ¶ 14.)

Through its website (https://www.franchoice.com/), FCI held itself out as directing prospective franchisees to "high quality franchise businesses that match your requirements" and represented that it would match "entrepreneurs like you with the

perfect franchise business." (*Id.* ¶ 15.)  FCI stressed that Plaintiff could "avoid the confusion of researching" franchise opportunities and could focus on those franchises that FCI had "selected … as franchise businesses matching [his] requirements." (*Id.*)  FCI further represented that "[t]hey will be by your side coaching you and making sure you are getting the information you need in order to make the best decision for you." (*Id.*)  Gilfillan also provided Plaintiff a document entitled "Franchise Company Investigation Procedure" that stated that the Franchise Disclosure Document disclosed the history of the franchise and its officers and directors, all costs and fees that the franchisee would be subject to, any relevant litigation history of the company or its officers, "any business failures, ownership transfers, franchise agreement terminations or other potentially adverse information relating to the success rate of the existing units in the system." (*Id.* ¶ 16.)

On June 27, 2016, Gilfillan sent a letter to Li summarizing his understanding of Li's wishes and needs for a franchise business, including an opportunity that would allow Li to create an income and a proven franchise system with a simple business model that leveraged available capital, created consistent cash flow, delivered a good rate of return; and maintained a flexible schedule. (*Id.* ¶ 17.)  On June 28, 2016, Gilfillan called Li to discuss four potential franchise systems that met these criteria, one of which was ILKB, LLC ("ILKB").  During this conversation, Li expressed interest in ILKB, which contacted him a few days later. (*Id.* ¶ 18.)  Non-party ILKB is the franchisor of "iLoveKickboxing.com" franchises, which are fitness facilities dedicated to kickboxing, a form of physical fitness. (*Id.* ¶ 7.)  At all relevant times, ILKB was a New York limited

liability company with its headquarters in New York State.  (*Id.*)  ILKB offered and sold franchises only in and from New York State.  (*Id.*)

Prior to the purchase of an ILKB franchise, Gilfillan made the following representations or omissions concerning the financial performance of the franchise: Gilfillan encouraged Li to become a multi-unit owner to leverage the economy of scale and represented that it would be possible for Li to open additional locations with the profits of one or two locations; Gilfillan represented that Li would only need to invest $225,000 to $250,000 in one ILKB unit; and Gilfillan represented that an ILKB franchise could be operated through absentee ownership.  (*Id.* ¶ 18.)

In reliance upon these representations, Li invested $110,000 in franchise fees for the purchase of three territories, additional investments in building the location, and undertook substantial lease and loan obligations.  (*Id.* ¶ 19.)  Plaintiff signed a single-unit franchise agreement on August 30, 2016, and a multi-unit agreement for two additional locations on the same date.  (*Id.*)  Li then undertook substantial lease obligations and opened his outlet in Wheeling, Illinois on August 12, 2017.  (*Id.* ¶ 20.)

After opening the business, Plaintiff learned that the representations that Gilfillan had made to Li relating to ILKB franchises were untrue, including his discovery that: ILKB franchisees did not generally make a profit of $100,000 within a year; the costs associated with setting up a studio were higher than represented; it was not possible to operate the franchise as an absentee owner; and it was not possible to open additional locations with the profits of one or two locations.  (*Id.* ¶ 23.)

Defendants also failed to do or disclose their due diligence by not discovering or

communicating to Plaintiff the existence of lawsuits and a bankruptcy related to ILKB's founder and its affiliates. (*Id.* ¶¶ 24-25.) Li asserts that had he known of this information he would not have purchased any franchises from ILKB. (*Id.* ¶ 25.)

Plaintiff asserts claims for relief against Defendants for their alleged violations of the New York Franchise Sales Act, N.Y. Gen. Bus. L. 680 *et seq.*; the Illinois Franchise Disclosure Act, 815 Ill. Comp. Stat. Ann. 705/6; and the Minnesota Franchise Act, Minn. Stat. §80C.01 *et seq.* Plaintiff also asserts claims against Defendants for common law fraud and negligent misrepresentation.

Defendants move to dismiss Plaintiff's claims under the New York Franchise Sales Act ("NYFSA"), the Illinois Franchise Disclosure Act ("IFDA"), and the Minnesota Franchise Act ("MFA").

## II.    LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition, a court must afford the plaintiff all reasonable inferences from those allegations. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:

While a plaintiff need not set forth "detailed factual allegations," *Twombly*, 127 S. Ct. at 1964, or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam), the complaint must include sufficient factual allegations to

6

provide the grounds on which the claim rests. *Twombly*, 127 S. Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," *Bediako*, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). While matters "outside the pleadings" may not be considered in deciding a Rule 12 motion to dismiss, documents "necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

## III.    ANALYSIS

### A.    Plaintiff's Claim Under the New York Franchise Sales Act

According to Plaintiff, FCI and Gilfillan violated the NYFSA by making false representations and omissions to him for the purpose of inducing him to purchase an ILKB franchise. (Dkt. 11 ¶¶ 30, 32.) Defendants argue that the NYFSA claim fails as a matter of law because they are not franchisors, and because they did not offer or sell any

franchise to Plaintiff, given that it was non-party ILKB who offered and sold the franchise at issue and the Amended Complaint does not allege that Defendants offered or sold a franchise to Plaintiff on behalf of ILKB.  (Dkt. 14 at 7-8.)

Under New York law, "[t]he primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature." N.Y. Stat. Law § 92.  When the language of a statute is plain, courts are required to follow its mandates.  *See Kimmel v. State*, 29 N.Y.3d 386, 392, 80 N.E.3d 370, 373 (2017) (concluding that courts under New York law should look "first to the plain language of the statute[ ] as the best evidence of legislative intent") (quotation marks and citation omitted); *Better World Real Estate Grp. v. New York City Dep't of Fin.*, 122 A.D.3d 27, 35, 992 N.Y.S.2d 247 (2014) (citations omitted) ("[C]ourts should construe clear and unambiguous statutory language as to give effect to the plain meaning of the words used.").  The NYFSA was enacted specifically to prevent, combat, and protect the franchisee from rampant franchise sales fraud, it is remedial in nature, and therefore, is to be liberally construed.  *See A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*, 162 Misc. 2d 941, 951, 618 N.Y.S.2d 155, 161 (Sup. Ct. 1994), *aff'd*, 214 A.D.2d 473, 625 N.Y.S.2d 904 (1995), *aff'd as modified*, 87 N.Y.2d 574, 663 N.E.2d 890 (1996) (citations omitted).  In that interpretative context, courts are obliged to "'harmonize the various provisions' of a statute to achieve its legislative purpose." *Id.* (citations omitted).

The NYFSA provides that the following conduct is unlawful:

2. It is unlawful **for a person, in connection with the offer, sale or purchase of any franchise**, to directly or indirectly:

8

(a) Employ any device, scheme, or artifice to defraud.

(b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. It is an affirmative defense to one accused of omitting to state such a material fact that said omission was not an intentional act.

(c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

N.Y. Gen. Bus. Law § 687(2) (emphases added). "A **person who offers or sells** a franchise in violation of . . . [§ 687] is liable to the person purchasing the franchise for damages and, if such violation as willful and material, for rescission, with interest at six percent per year from the date of purchase, and reasonable attorney fees and court costs." N.Y. Gen. Bus. Law § 691(1) (emphasis added).

## 1.    Whether Defendants Are "Persons" Under the NYFSA

While Defendants' arguments turn on the argument that it was ILKB as the franchisor who offered and sold the franchises at issue, that argument ignores the plain meaning of the NYFSA of who can be held liable under the Act. Even assuming that ILKB is the franchisor, liability under the NYFSA is not limited to franchisors; rather it extends broadly to "person[s]," which is defined under the NYFSA as follows:

> "Person" means an individual, corporation, partnership, joint venture, association, company, trust, unincorporated organization or other entity and shall include any other person that has a substantial interest in or effectively controls such person, as well as the individual officers, directors, general partners, trustees or other individuals in control of the activities of each such person.

N.Y. Gen. Bus. Law § 681(13).  Indeed, Defendants, notwithstanding their contention

that they did not offer to sell or in fact sell a franchise as required for liability under the

NYFSA, do not contest that they are persons for the purposes of § 681(13).

    **2.**    **Whether Defendants' Alleged Conduct Amounts to an "Offer" or an "Offer to Sell" Under the NYFSA.**

Plaintiff argues that Defendants' conduct amounts to a solicitation to them to buy

an ILKB franchise.  (Dkt. 18 at 12-14.)  Defendants' assertion that no liability can attach

to them under the NYFSA because there are no allegations in the Amended Complaint

that they sold or offered to sell an ILKB franchise to Plaintiff relies on an overly narrow

construction of the term "offer" under the NYFSA.  The NYFSA defines "offer" as

follows:

> "Offer" or "offer to sell" includes **any attempt to offer to dispose of, or solicitation of an offer to buy, a franchise or interest in a franchise for value**.  The terms "offer" and "offer to sell" do not include the renewal or extension of an existing franchise where there is no interruption in the operation of the franchised business by the franchisee.

N.Y. Gen. Bus. Law § 681(11) (emphases added).

The word "solicitation" is not defined within the NYFSA.  Under New York law,

courts "are to construe words of ordinary import with their usual and commonly

understood meaning, and in that connection have regarded dictionary definitions as

'useful guideposts' in determining the meaning of a word or phrase."  *Rosner v. Metro.*

*Prop. & Liab. Ins. Co.*, 96 N.Y.2d 475, 479-80, 729 N.Y.S.2d 658, 660 (2001) (citation

omitted).  The plain meaning of the word "solicitation" is found in the dictionary; it in

relevant part, means the "act or an instance of requesting or seeking to obtain something"

or "[a]n attempt or effort to gain business."  *Solicitation, Black's Law Dictionary* (11th

ed. 2019); *see generally, Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 223 (1992) ("'Solicitation,' commonly understood, means 'asking' for, or 'enticing' to, something[.]") (citing *Black's Law Dictionary* (6th ed. 1990)).

Here, the Amended Complaint alleges that FCI held itself out as directing prospective franchisees to high quality franchise businesses, and Gilfillan represented that "we have PRE-SCREENED literally hundreds of franchise companies to find the ones that are A+ Opportunities" (Dkt. 11 ¶¶ 12, 15); stressed to Plaintiff that they should focus on the franchises for them by FCI (*id.* ¶ 15), and Gilfillan connected Plaintiff with ILKB (*id.* ¶ 18). Moreover, Gilfillan allegedly made a numerous of representations regarding favorable reasons why Plaintiff should purchase an ILKB franchise. (*Id.* ¶ 18). Given the NYFSA's broad language under § 687(2) prohibiting fraud "**in connection with** the offer, sale or purchase of any franchise" and the statute's broad remedial purpose, the Court finds that Plaintiff has plausibly alleged that FCI solicited from Plaintiff an offer to buy an ILKB franchise, as evidenced by Gilfillan's alleged representations set forth above, made to entice an offer from Plaintiff for an ILKB franchise. While Defendants argue that none of these solicitations amounted to an offer and that there are no plausible allegations of Defendants making a solicitation (Dkt. 14 at 11-12; Dkt. 20 at 4-6), this argument ignores the fact that the definition of an "offer" includes solicitation by Defendants of an offer from Plaintiff to purchase a franchise, which is adequately alleged in the Amended Complaint as evidenced by the alleged numerous positive statements made by Gilfillan as a whole regarding ILKB so that they could ultimately receive a commission from ILKB for the sale. *See Reed v. Oakley*, 172

Misc. 2d 655, 658, 661 N.Y.S.2d 757, 759 (Sup. Ct. 1996), *aff'd*, 240 A.D.2d 991, 659

N.Y.S.2d 820 (1997) ("The conduct covered by the definition is not limited to the act of

signing on the dotted line after the solicitation is made.  Here, the solicitation and other

negotiations were made prior to approval, and, by definition, amounted to an offer to sell

prior to approval.").  Simply put, Plaintiff has adequately alleged for purposes of the

NYFSA that Gilfillan's communications, taken together, were seeking to obtain and

entice from Plaintiff an offer to purchase an ILKB franchise.

   Again, Defendants' arguments focus on the fact that the Amended Complaint does

not allege that they are in the business of selling franchises or that they sold a franchise in

this case.  (Dkt. 14 at 7; Dkt. 20 at 3.)  However, the NYFSA separately defines

"franchisor" as "a person who grants a franchise."  N.Y. Gen. Bus. Law § 681(5).  Had

the New York Legislature only meant for liability to attach to franchisors, they simply

could have defined a "Person" as a Franchisor consistent with § 681(5).  Instead, as set

forth above, they defined it expansively.  Moreover, while the Court agrees that there is

no dispute that the ultimate transaction involving the sale of the franchise was between

ILKB and Plaintiff, the word "solicit" does not confine itself to a franchisor and the

ultimate act of the offer and acceptance, especially here where it is alleged that

Defendants had a financial incentive to convince Plaintiff to purchase an ILKB franchise.

*See generally*, *Reed*, 172 Misc. 2d at 658 ("The conduct covered by the definition is not

limited to the act of signing on the dotted line after the solicitation is made."); *Pinter v.*

*Dahl*, 486 U.S. 622, 643 (1988)[1] (finding with respect to the Securities Act that "[u]nder these definitions, the range of persons potentially liable under § 12(1) is not limited to persons who pass title. The inclusion of the phrase 'solicitation of an offer to buy' within the definition of 'offer' brings an individual who engages in solicitation, an activity not inherently confined to the actual owner, within the scope of § 12.").

Defendants further argue that the remedies section of the NYFSA makes it clear that the NYFSA applies to franchisors, not Defendants. (Dkt. 14 at 14.) The remedies provision of the NYFSA provides:

> A person who offers or sells a franchise in violation of section six hundred eighty-three, six hundred eighty-four or six hundred eighty-seven of this article **is liable to the person purchasing the franchise for damages and, if such violation as willful and material, for rescission**, with interest at six percent per year from the date of purchase, and reasonable attorney fees and court costs.

N.Y. Gen. Bus. Law § 691(1) (emphases added). Defendants argue that the language of Section 691 undercuts Plaintiff's arguments that they can be held liable under the NYFSA because the remedy of rescission within this provision can only be granted

---

[1]    The Supreme Court went on to explain that:

> [B]rokers and other solicitors are well positioned to control the flow of information to a potential purchaser, and, in fact, such persons are the participants in the selling transaction who most often disseminate material information to investors. Thus, solicitation is the stage at which an investor is most likely to be injured, that is, by being persuaded to purchase securities without full and fair information.

*Id.* at 646-47. This is similar to the scenario alleged here, where "brokers" (Dkt. 11 ¶ 5) such as FCI are poised to control the information disseminated to prospective franchisees and it is at this solicitation stage where prospective franchisees are likely to be persuaded to purchase an ILKB franchise, especially where FCI's agents are allegedly acting as an independent source of information.

through ILKB, the franchisor.  (Dkt. 14 at 14.)

The fact that the remedies under the NYFSA include rescission along with damages as possible remedies does not mean that the NYFSA can only apply to franchisors or that a person cannot seek one remedy without seeking the other.  Such an interpretation is contrary to the clear language of the statute.  By way of example, there is no dispute that an employee of a "person" as defined under the NYFSA can be held liable under the NYFSA.  *See* N.Y. Gen. Bus. Law § 691(3) (employees can be held liable to the same extent as an employer).  However, under Defendants' argument, such an employee could not be held liable because obviously the employee, even if they are an employee of a franchisor, does not have the ability to effect a rescission.  Simply put, Defendants' interpretation would rewrite the definition of "person" under the act to only mean a franchisor.  Given the expansive scope as to what includes a "person" and "offer" under the plain language of the NYFSA, the fact that the statute was "enacted specifically to prevent, combat and protect the franchisee from rampant franchise sales fraud," *A.J. Temple Marble & Tile, Inc.*, 162 Misc. 2d at 951, and the need to harmonize the various provisions of the NYFSA to effectuate this purpose, *id.*, the Court finds that the intent of the New York Legislature was not only to punish franchisors but to ensure that brokers, such as FCI and their agents, are held accountable for the resulting harm to franchisees from their alleged fraudulent statements that franchisees acted in reliance on when deciding to purchase a franchise, even if the ultimate purchase is from a different party.

### 3. Whether the Sale or Offer to Sell Occurred in New York.

Defendants also argue that dismissal of the NYFSA claim here is necessary under

General Business Law § 683 because there are no allegations that Defendants or Plaintiff

has connections with New York or that any of the interactions between Plaintiff and

Defendants occurred in New York.  (Dkt. 14 at 13-13.)  Plaintiff counters that the

NYFSA applies in this case because FCI and Gilfillan solicited Plaintiff to purchase an

ILoveKickBoxing franchise from ILKB, and ILKB accepted Plaintiff's offer to buy in

New York.  (Dkt. 18 at 14.)

"The New York Franchise Sales Act [ ], GBL §§ 680-695, governs franchise

transactions, but only when the sale or offer to sell occurs in New York."  *EV Scarsdale*

*Corp. v. Engel & Voelkers N. E. LLC*, 48 Misc. 3d 1019, 1028 (N.Y. Sup. Ct. 2015)

(citing *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 70 F. Supp. 3d 376, 393

(D.D.C. 2014), citing *JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599, 616-17

(S.D.N.Y. 2011) ("[T]he NYFSA is applicable only to specific transactions solicited or

accepted in New York, or affecting New York."), quoting *Century Pac., Inc. v. Hilton*

*Hotels Corp.*, 2004 WL 868211, at *5 (S.D.N.Y. 2004)); *see generally,* N.Y. Gen. Bus.

Law § 681(12)[2] (defining for the purposes of necessary disclosures under § 683 when an

offer is made in New York).

---

[2]    Section 681(12) provides:

(a) An offer or sale of a franchise is made in this state when an offer to sell
is made in this state, or an offer to buy is accepted in this state, or, if the
franchisee is domiciled in this state, the franchised business is or will be
operated in this state.

(b) An offer to sell is made in this state when the offer either originated from
this state or is directed by the offeror to this state and received at the place to
which it is directed.  An offer to sell is accepted in this state when acceptance
is communicated to the offeror from this state.

In this case, the Amended Complaint alleges that ILKB offered and sold franchises only in and from New York State and that ILKB accepted Plaintiff's offer in New York.  (Dkt. 11 ¶¶ 7, 31.)  Given that the communications at issue allegedly induced Plaintiff to ultimately make an offer to purchase a franchise in New York, Plaintiff's claim is governed by the NYFSA.

### 4.    Conclusion

For all of the reasons set forth above, Plaintiff has adequately alleged a plausible claim against Defendants under the NYFSA and the Motion to Dismiss this claim should be denied.

## B.    Plaintiff's Claim under the Illinois Franchise Disclosure Act

Defendants argue that Plaintiff's IFDA claim should be dismissed because the remedies section of the statute makes it evident that applies to franchisors, not Defendants.  (Dkt. 14 at 15.)

According to the Illinois Legislature, the intent of the IFDA is as follows:

It is the intent of this Act: (a) to provide each prospective franchisee with the information necessary to make an intelligent decision regarding franchises being offered for sale; and (b) to protect the franchisee and the franchisor by providing a better understanding of the business and the legal relationship between the franchisee and the franchisor.

---

(c) An offer to sell is not made in this state merely because a publisher circulates or there is circulated on his behalf in this state a bona fide newspaper or other publication of general, regular and paid circulation which has had more than two-thirds of its circulation outside this state during the past twelve months, or a radio or television program originating outside this state is received in this state.

N.Y. Gen. Bus. Law § 681(12).

16

815 Ill. Comp. Stat. Ann. 705/2(2).  To this end, the IFDA prohibits the following

fraudulent practices:

> Fraudulent practices. **In connection with the offer or sale** of any franchise
> made in this State, it is unlawful **for any person, directly or indirectly**, to:
>
> > (a) employ any device, scheme, or artifice to defraud;
> > (b) make any untrue statement of a material fact or omit to state a
> > material fact necessary in order to make the statements made, in the light of
> > the circumstances under which they are made, not misleading; or
> > (c) engage in any act, practice, or course of business which operates
> > or would operate as a fraud or deceit upon any person.

815 Ill. Comp. Stat. Ann. 705/6 (emphases added).  The IFDA contains similar definitions

for "person" and "offer" as the NYFSA:

> (7) "Person" means an individual, a corporation, a partnership, a joint
> venture, an association, a joint stock company, a trust, or an unincorporated
> organization.
>
> > \* \* \*
>
> (12) "Offer" or "offer to sell" includes every attempt to offer to dispose of,
> or solicitation of an offer to buy, a franchise, any interest in a franchise or an
> option to acquire a franchise for value.

815 Ill. Comp. Stat. Ann. 705/3(7), (12).

The remedies provision relied upon by Defendants provides:

> § 26. Private civil actions. Any person who offers, sells, terminates, or fails
> to renew a franchise in violation of this Act shall be liable to the franchisee
> who **may sue for damages caused thereby**. This amendatory Act of 1992
> is intended to clarify the existence of a private right of action under existing
> law with respect to the termination or nonrenewal of a franchise in violation
> of this Act. In the case of a violation of Section 5, 6, 10, 11, or 15 of the Act,
> the franchisee **may also** sue for rescission.

815 Ill. Comp. Stat. Ann. 705/26 (emphases added).

Defendants argue that the language of Section 705/26 undercuts Plaintiff's

arguments that they can be held liable under the IFDA because the remedy of rescission within this provision can only be granted through ILKB, the franchisor.  (Dkt. 14 at 15-16.)

"The primary objective of this court in construing a statute is to ascertain and give effect to the legislature's intent."  *McVey v. M.L.K. Enterprises, L.L.C.*, 2015 IL 118143, ¶ 11, 32 N.E.3d 1112, 1115 (citation omitted).  "The plain language of a statute is the most reliable indication of the legislature's intent, and, when the language is clear, it must be applied as written without resort to aids or tools of interpretation."  *Id.*  Courts are to read the statutory provisions in concert and harmonize them, avoiding an interpretation rendering part of the statute superfluous.  *See Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25, 376 Ill. Dec. 294, 301, 998 N.E.2d 1227, 1234 (citation omitted); *see also Merritt v. Dep't of State Police*, 2016 IL App (4th) 150661, ¶ 20, 56 N.E.3d 593, 596.

The fact that the IFDA includes rescission, along with damages, as possible remedies, does not mean that the IFDA can only apply to franchisors or that a person cannot seek one remedy without seeking the other.  Such an interpretation is contrary to the clear language of the statute.  By way of example, there is no dispute that an employee of a "person" as defined under the IFDA can be held liable under the IFDA. *See* 815 Ill. Comp. Stat. Ann. 705/26 (employees can be held liable to the same extent as an employer); *see also Bixby's Food Sys., Inc. v. McKay*, 193 F. Supp. 2d 1053, 1062-63 (N.D. Ill. 2002) (finding an officer liable under Section 705/26).  However, under Defendants' argument, such an employee could not be held liable because obviously the employee, even if they are an employee of a franchisor, does not have the ability to effect

18

a rescission.  Simply put, Defendants' interpretation would rewrite the definition of

"person" under the act to only mean a franchisor.  Given the expansive scope as to what

includes a "person" and "offer" under the plain language of the IFDA, the fact that the

statute was enacted specifically to "provide each prospective franchisee with the

information necessary to make an intelligent decision regarding franchises being offered

for sale," 815 Ill. Comp. Stat. Ann. 705/2(2), and the need to harmonize the various

provisions of the IFDA to effectuate this purpose, *Hartney Fuel Oil*, 998 N.E.2d at 1234,

the Court finds that the intent of the Illinois Legislature was not only to punish

franchisors but to ensure that brokers, such as FCI and their agents, are held accountable

for the resulting harm to franchisees from their alleged fraudulent statements that

franchisees acted in reliance upon when deciding to purchase a franchise, even if the

ultimate purchase is from a different party.

For all of these reasons, Plaintiff has adequately alleged a plausible claim against

Defendants under the IFDA and the Motion to Dismiss this claim should be denied.

**C.    Plaintiff's Claim under the Minnesota Franchise Act**

According to Defendants, to be covered by the MFA, the sale or offer to sell had

to be made in Minnesota.  (Dkt. 14 at 17.)  Defendants, relying upon Minn. Stat. §

80C.19, argue that the MFA cannot apply to Plaintiff's claims because Plaintiff has only

identified a franchise unit located in Wheeling, Illinois, not in Minnesota.  (Dkt. 14 at 17

(citing Dkt. 11 ¶ 20).)  Plaintiff counters with agency and respondeat superior theories,

asserting that because Gilfillan, an Illinois resident,[3] is the agent of a Minnesota

corporation, the offer originated from Minnesota for the purposes of the MFA. (Dkt. 18

at 26-29.)

> Under Minnesota law:
>
> No person may offer[4] or sell a franchise **in this state** by means of any
> written or oral communication which includes an untrue statement of a
> material fact or which omits to state a material fact necessary in order to
> make the statements made, in the light of the circumstances under which
> they were made, not misleading.

Minn. Stat. § 80C.13, subd. 2 (emphasis added).

> With respect to liability under § 80C.13, the MFA defines an offer to sell or a

purchase of a franchise "in this state" as follows:

> Subd. 1. Applicable sales and offers to sell or purchase. The provisions of
> sections 80C.01 to 80C.22 concerning sales and offers to sell shall apply
> when a sale or offer to sell is made in this state; when an offer to purchase is
> made and accepted in this state; or when the franchise is to be located in this
> state.
>
> Subd. 2. Offer to sell or purchase made in state. For the purpose of sections
> 80C.01 to 80C.22, an offer to sell or to purchase is made in this state, whether
> or not either party is then present in this state, when the offer originates from
> this state or is directed by the offeror to this state and received by the offeree
> in this state.
>
> Subd. 3. Offer to purchase or sell accepted in state. For the purpose of this
> section, an offer to purchase or to sell is accepted in this state when
> acceptance is communicated to the offeror in this state, and has not
> previously been communicated to the offeror, orally or in writing, outside

---

[3] Plaintiff does not allege that Gilfillan himself, outside of agency theory, took any actions aimed towards or from Minnesota relating to the present claims.

[4] Similar to the NYFSA and IFDA, under the MFA, "offer" and "offer to sell" "includes every attempt to offer to dispose of, and **every solicitation of an offer to buy**, a franchise or interest in a franchise for value." Minn. Stat. § 80C.01, subd. 16 (emphasis added).

this state; and acceptance is communicated to the offeror in this state, whether or not either party is then present in this state, when the offeree directs it to the offeror in this state reasonably believing the offeror to be in this state and it is received by the offeror in this state.

Subd. 4.  Offer to sell or purchase not made in state.  An offer to sell or to purchase is not made in this state when the publisher circulates or there is circulated in the publisher's behalf in this state any bona fide newspaper or other publication of general, regular and paid circulation which is not published in this state, or when a radio or television program originating outside this state is received in this state.

Minn. Stat. § 80C.19.

The MFA "was adopted in 1973 as remedial legislation designed to protect potential franchisees within Minnesota from unfair contracts and other prevalent and previously unregulated abuses in a growing national franchise industry." *Clapp v. Peterson*, 327 N.W.2d 585, 586 (Minn. 1982) (citation omitted); *see also Martin Investors, Inc. v. Vander Bie*, 269 N.W.2d 868, 872 (Minn. 1978).  When the MFA was introduced as a bill in 1973, it was described as a "bill to give the commissioner of securities some control over the franchising business in the state of Minnesota." *In re Ne. Exp. Reg'l Airlines, Inc.*, 228 B.R. 53, 59 (Bankr. D. Me. 1998) (quoting Hearing on the Minnesota Franchise Act Before the Minnesota Senate, 68th Legis., Reg. Sess. (Minn. 1973) (statement by unidentified senator)).  *Clapp*, relied upon by Defendants, dealt with a technical violation of the MFA requiring a person offering or selling a franchise within the state to register with the Commissioner of Securities a proposed public offering statement making full disclosure of all facts required by statute or rules of the commissioner.  327 N.W.2d at 586 (citing Minn. Stat. §§ 80C.02 (1980), 80C.04 (1980) and 80C.06 (1980)).  It rendered no analysis in its decision as to whether the defendant

21

was offering or selling a franchise within the state. *Martin Investors*, *supra*, only involved a Minnesota-based franchisee where the defendant published advertisements for consultants in at least two newspapers published within Minnesota; the agent of the defendant discussed the proposed consultant arrangement in a long-distance telephone call with an agent of the plaintiff, who was within Minnesota, and the defendant CCC then mailed a sample copy of its standard consultant agreement to him in Minnesota. *See Martin Investors*, 269 N.W.2d at 873. Based on these facts, the court concluded:

> Through these activities, CCC directly induced a Minnesota resident to enter a contractual relationship upon essentially all of the terms proposed in the sample consultant agreement forwarded to Faye but without the benefit of the full disclosure provided by the registration requirements of the Franchises Act. This is precisely the kind of activity that our act was designed to regulate and that must be subjected to the requirements of registration and full disclosure if the protective purposes of the act are to be realized.

*Id.* The Minnesota Supreme Court went on to reject the notion that an offer made in Minnesota needed to be shown in the "strictest sense of contract law" as requiring too narrow a reading of the MFA as a remedial statute. *Id.* at 873-74. Recently the Minnesota Court of Appeals noted that while the *Martin Investors* court "recognized the legislature's intent in adopting the MFA was to protect franchisees in Minnesota" it did "not address . . . the scope of the MFA."[5] *Cambria Co. LLC v. M&M Creative Laminants Inc.*, No. A18-1978, 2019 WL 3543602, at *2 (Minn. Ct. App. Aug. 5, 2019).

---

[5] In *Cambria*, the Court considered, but ultimately declined, a request to certify the following question: "May a non-Minnesota resident claiming to be a franchisee invoke the provisions of the Minnesota Franchise Act where its only connection with Minnesota is the location of the purported franchisor?" 2019 WL 3543602, at *2.

One court in this district has characterized territorial applicability of the MFA as "murky." *Wave Form Sys., Inc. v. AMS Sales Corp.*, 73 F. Supp. 3d 1052, 1062 (D. Minn. 2014). Indeed, courts examining the issue have reached inconsistent results. For example, in *Healy v. Carlson Travel Network Associates, Inc.*, 227 F. Supp. 2d 1080 (D. Minn. 2002), the court rejected an argument similar to the one being presented by Plaintiff:

> Healy urges that the statute applies because the offer to sell the franchise came from an agent of Carlson, a Minnesota corporation. No authority is cited for the proposition that the MFA applies merely because the franchisor is a Minnesota corporation. Healy concedes that Crider, the Carlson agent he contacted for information and with whom he negotiated the sale, was based in Florida. The newspaper advertisement for Carlson franchise opportunities that Healy responded to, was placed in the Chicago Tribune by Crider's office in St. Petersburg, Florida. The Agreement was presented to and signed by Healy in Illinois. Healy has not demonstrated that the MFA applies to his case.

*Id.* at 1088; *see also Klosek v. Am. Express Co.*, No. CIV. 08-426 JNE/JJG, 2008 WL 4057534, at *21 (D. Minn. Aug. 26, 2008), *aff'd*, 370 F. App'x 761 (8th Cir. 2010) ("As the statute indicates, the geographic limits do not apply to the entire MFA, but only to 'the provisions concerning sales and offers to sell.'") (quoting Minn. Stat. § 80C.19, subd. 1) (cleaned up).[6]

---

[6]    The Court in *Klosek*, distinguished the facts in that case from those in *Healey* as follows:

> And though Ameriprise urges otherwise, it appears that *Healy* chiefly involved misrepresentations in the sale of a franchise, and not other complaints under the MFA. *See id.* at 1083-84. Because the current litigation does not involve a sale or offer to sell, it is distinguishable from *Healy*.

2008 WL 4057534, at *21.

23

At least one court has held that "even where a party to a 'franchise agreement' is a Minnesota corporation, the agreement is not within the purview of the MFA if the franchisee is not located in and does not operate in Minnesota." *Johnson Bros. Liquor Co. v. Bacardi U.S.A., Inc.*, 830 F. Supp. 2d 697, 703 (D. Minn. 2011) (citing *Hockey Enters., Inc. v. Total Hockey Worldwide, LLC*, 762 F. Supp. 2d 1138, 1146 (D. Minn. 2011)). The basis of the court's holding was that the "MFA applies only to 'franchise agreements' within the purview of Minnesota law. Minnesota cannot regulate 'franchise agreements' that are formed and preformed in other states." *Id.* (citing *In re St. Paul & K.C. Grain Co.*, 89 Minn. 98, 94 N.W. 218, 225 (Minn. 1903) (noting that "general rule" is that state statutes apply only to territory of state that enacted the statute)).

In *Candleman Corp. v. Farrow*, No. 9802463, Bus. Franchise Guide (CCH) § 11,635, 1999 WL 35768614 (D. Minn. Feb. 1, 1999), the court found that the MFA applied to the facts in that case because (1) the franchisor's offer to sell the franchise originated from the franchisor's Minnesota office; (2) the acceptance of the offer was received by the franchisor in Minnesota; and (3) the franchise agreement's choice of law provision provided for Minnesota law. *Id.*

In *Wave Form*, *supra*, the plaintiff, an Oregon company, asserted that the MFA applied to its agreement with a Minnesota manufacturer, because the manufacturer's offer to sell originated from Minnesota and acceptance of that offer was received by AMS in Minnesota. 73 F. Supp. 3d at 1059. The plaintiff argued that the "originated from" language was met when the manufacturer transmitted the agreement from its office in Minnesota to Wave Form in Oregon, and the "received by the offeree in this state"

24

language was satisfied when Wave Form executed and subsequently returned the agreement to AMS in Minnesota for its signature. *Id.* at 1060. In an order on a motion for a preliminary injunction, the court found that "Wave Form's position, while it is seemingly a fair construction of the statutory language, fails to account for the MFA's territorial application that was intended by the legislature," and reaffirmed that the "legislative intent behind the passage of the [Franchise Act] was to protect Minnesota franchisees located within Minnesota." *Id.* (citing *Martin Investors*, 269 N.W.2d at 872). Ultimately, the Court held as follows with respect to whether the plaintiff was likely to prevail on its MFA claim:

> At present, whether Wave Form will likely succeed on the merits of its claim is uncertain. The entirety of Wave Form's position rests on the applicability of the MFA. While a construction of the language of the statute does support Wave Form's position, the Minnesota nexus with the factual predicate is very minimal. Other than receiving an offer transmitted from Minnesota and then remitting acceptance back to Minnesota, Wave Form has had no contact with Minnesota. Wave Form has never had a single sale in this state nor does it have any physical presence here. While Wave Form does conduct business in states outside of Oregon, it is undisputed that Minnesota is not one of them. To construe the MFA broadly enough to apply here given the facts currently of record in this case is a stretch.

*Wave Form*, 73 F. Supp. 3d at 1061.

This Court's decision must be informed foremost by the plain language of the MFA. *See Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). Here, the pertinent portion of § 80C.19, dealing with offers made in this state provides:

> Offer to sell or purchase made in state. For the purpose of sections 80C.01 to 80C.22, an offer to sell or to purchase is made in this state, whether or not either party is then present in this state, **when the offer originates from this state** or is directed by the offeror to this state and received by the offeree in this state.

Minn. Stat. § 80C.19, subd. 2 (emphasis added).  There is nothing in the language of the statute suggesting that the MFA cannot apply to a foreign franchisee when the offer, in this case a solicitation, "originates" from Minnesota.  The Court in *Wave Form* conceded that this was "seemingly a fair construction of the statutory language," 73 F. Supp. 3d at 1060, before ignoring that same language and concluding that the legislative intent behind the passage of the MFA was to protect Minnesota franchisees located within Minnesota.  There is nothing in the MFA remotely carving out such an exception. Indeed, in 1981, the legislature added an exemption to the MFA's registration requirements under Minn. Stat. § 80C.02, exempting any "offer or sale of a franchise to a resident of a foreign state, territory, or country who is neither domiciled in this state nor actually present in this state, if the franchise business is not to be operated wholly or partly in this state, and if the sale of this franchise is not in violation of any law of the foreign state, territory, or county concerned."  Minn. Stat. § 80C.03(h) (1981 Supp.). Had the legislature desired a similar carve-out regarding the prohibitions set forth in Minn. Stat. § 80C.13 for franchises located outside of the state of Minnesota it could have included a similar exemption within Section 80C.03.  If the statutory language were construed as urged by Defendants, Minnesota would be without authority to enforce its franchise laws against a business located physically within Minnesota but which directed its fraudulent efforts towards non-residents **from** within Minnesota.  It is unlikely that the legislature intended such a result.  Instead, the focus, based on the plain language of the statute is on the nexus of the conduct—whether the solicitations at issue originated from Minnesota.  *See Candleman*, Bus. Franchise Guide (CCH) § 11,635, 1999 WL 35768614.

Such an interpretation is most consistent with the language of the MFA and the general rule that Minnesota statutes are to apply to conduct within its borders.

However, the Court cannot interpret the MFA so broadly that it will apply to a Minnesota company, such as FCI, even through a theory of respondeat superior or agency as argued by Plaintiff (Dkt. 18 at 26-29), if none of the illegal acts complained of originated from Minnesota. *See Healy*, 227 F. Supp. 2d at 1088. The Court will not rewrite the MFA to encompass such acts, regardless of its remedial nature.

The only allegations in the Amended Complaint regarding Gilfillan are that he is an agent of FCI and that he resided and is a citizen of Illinois. (*Id.* ¶ 6.) There are no factual allegations in the Amended Complaint suggesting that the operative solicitations at issue originated from Minnesota, including that Gilfillan made the representations while in Minnesota. Under the doctrine of respondeat superior, "'the act of an agent within the scope of his agency is the act of his principal. The principal is liable because the law attributes to him the act of his agent, with the result that both are liable jointly and severally to the person injured by the wrongful act.'" *D.W. v. Radisson Plaza Hotel Rochester*, 958 F. Supp. 1368, 1380 (D. Minn. 1997) (quoting *Melady v. South St. Paul Live Stock Exch.*, 142 Minn. 194, 171 N.W. 806, 807 (1919)) (cleaned up). Even assuming that these doctrines apply to the MFA, they only impute the acts of Gilfillan back to FCI in Minnesota for purposes of liability and do not speak to what matters for the purposes of the MFA—whether the malfeasance at issue originated from Minnesota. It would be a closer question if the Amended Complaint alleged that someone from

within FCI in Minnesota directed Gilfillan to make the specific alleged solicitations to Plaintiff. However, that is not the case here.[7]

For all of these reasons, the Court finds that Plaintiff's MFA claim should be dismissed.

## IV.   <u>RECOMMENDATION</u>

Based on the above, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6) (Dkt. 12) be **GRANTED** in part and **DENIED** in part as follows:

1.      Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6) (Dkt. 12) be **GRANTED** as to Plaintiff's claim under the Minnesota Franchise Act, and that the claim be **DISMISSED WITHOUT PREJUDICE**; and

2.      Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6) (Dkt. 12) be **DENIED** as to Plaintiff's claims under the New York Franchise Sales Act and the Illinois Franchise Disclosure Act.

DATED: December 19, 2019                    *s/ Elizabeth Cowan Wright*
                                             ELIZABETH COWAN WRIGHT
                                             United States Magistrate Judge

---

[7]      Plaintiff asked that, if the Court finds the Amended Complaint does not state a claim under the MFA, the Court give Plaintiff leave to amend on the basis of an Independent Consultant Agreement between FCI and its consultants providing that a Consultant may not sell any franchises of franchisors with which FCI has a relationship, such as ILKB, because without FCI, Gilfillan never could have sold an ILKB franchise to Plaintiff. (Dkt. 18 at 21-22.) According to Plaintiff, this agreement means that the offer "originated" from FCI in Minnesota, "whether or not" Gilfillan was in Minnesota. (*Id.*) However, even if there is such an agreement, it does not mean that the representations originated in Minnesota, as it does not change the fact that it is alleged that Gilfillan made the operative allegedly fraudulent solicitations at issue from outside of Minnesota.

## <u>NOTICE</u>

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).